IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEATRICE EDWARDS and
CARL C. EDWARDS,

    Plaintiffs,

    v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al.,

    Defendants.

No. C 10-03755 CRB

**ORDER (1) GRANTING MOTION TO COMPEL ARBITRATION BY DEFENDANT CITIBANK; (2) GRANTING MOTION TO DISMISS BY DEFENDANT MERCURY; (3) GRANTING MOTION TO DISMISS BY DEFENDANT FRITTS; AND (4) SETTING STATUS CONFERENCE**

Pro se Plaintiffs Beatrice and Carl Edwards have brought suit against an individual and several entities, alleging a variety of causes of action stemming from a car accident on February 6, 2008. See Not. of Removal Ex. A (Complaint). Defendant MetLife removed the case from state court based on federal question jurisdiction due to Plaintiffs' ERISA claims. See Not. of Removal at 2.

Now pending are: (1) a Motion to Compel Arbitration by Defendant CitiBank, dckt. no. 21, which was originally calendared for November 5, 2010; (2) a Motion to Dismiss by Defendant Mercury Insurance,[1] dckt. no. 28; and (3) a Motion to Dismiss by Defendant Grace Fritts, dckt. no. 32. Before reaching these three motions, the Court addresses

---

[1] The Defendant sued as Mercury Insurance is actually Mercury Casualty Company. Mercury Mot. at 1. This Order refers to that Defendant as Mercury Insurance in order to be consistent with the Complaint.

1 Plaintiffs' argument, raised for the first time at the November 5, 2010 hearing on Defendant
2 CitiBank's Motion to Compel Arbitration, and the subject of a Declaration filed by Plaintiffs
3 on November 22, 2010, see dckt. nos. 36, 40, that removal was improper.  Plaintiff Carl
4 Edwards's Declaration asserts that "[s]ervice of summons and complaint was accomplished
5 on July 16, 2010 on CT Corporation, MetLife's agent for service of process," and that
6 MetLife's removal on August 24, 2010 was therefore late, as it took place more than 30 days
7 after service.  See dckt. no. 40 ¶¶ 1-2, 4.[2]  This objection fails.

The very documents that Plaintiffs cite in support of their assertion that service "was
accomplished on July 16, 2010" demonstrate that this is not so.  For example, Exhibit 4 to the
Declaration states that service was attempted on July 16, 2010 to CT Corporation, who
informed the process server that "they no longer accepted process of service," and that
"service was effectuated on July 27, 2010" (emphasis added).  These documents demonstrate
that service was not accomplished on July 16, 2010, but on either July 26 or 27.  MetLife's
removal on August 24 was within 30 days of either date.  See 28 U.S.C. § 1446(b).

Moreover, any motion to remand must be made within thirty days, if the basis for
remand is anything other than subject matter jurisdiction.  28 U.S.C. § 1447(c).  Here
Plaintiffs' objection is not based on subject matter jurisdiction; accordingly, Plaintiffs'
objection is itself untimely.  The case was therefore properly removed, and the Court will
now reach the pending motions.

**I.    BACKGROUND**

   **A.    Facts as to CitiBank**

Plaintiff Beatrice Edwards worked as a Business Banker for Citibank from March
2007 through the time of the car accident. Cmplt. at 11.  The accident resulted in an injury to
Plaintiff's knee, which required surgery.  Id.  Plaintiff's doctor informed her that she could
return to work, but "on a modified work program only."  Id.  Plaintiff gave her doctor's notes
regarding her need for a modified work program to her manager, and "assumed her manager

---

[2] Plaintiffs also assert that they objected to the removal in state court on September 20, 1020, and that MetLife did not appear. Id. ¶ 3, Ex. 5. However, Plaintiffs should not have objected to removal in state court after the case was removed; they should have done so here.

2

was following the doctor's instructions." Id. at 12.  At her doctor's instruction, Plaintiff subsequently contacted Citibank's Human Resources Manager, Theresa Beninavez, who advised Plaintiff to go on disability leave effective March 17, 2008.  Id.  Ms. Beninavez emailed Plaintiff on March 17, 2008 and told her on the phone that "Citibank never had a modified work program." Id.

Plaintiff alleges that her manager, Dean Keenan, knew that Citibank had no modified work program yet never told her that.  Id.  She alleges that "Citibank made no accommodations for [her] disability, and explains that because the lunch areas available to Citibank workers were up or down stairs, which her injury prevented her from accessing, she "was forced to eat in nearby restaurants," which cost her money.  Id.  She also once "almost slipped on the floor." Id.  She asserts that Citibank provided her no assistance "in getting her documentation into MetLife" once she was placed on disability, and that her personal mail was both delayed and opened when forwarded from the Citibank branch to her home. Id. at 13.  Plaintiff further alleges that Citibank terminated Plaintiff while she was on disability leave.  See id. at 13 ("Citibank breached its obligations . . . by terminating Plaintiff as alleged above").

Plaintiffs' Complaint includes eleven causes of action against Citibank.  They are: (1) breach of the employment contract; (2) breach of the obligation of good faith and fair dealing as to that employment contract; (3) discrimination based on race under FEHA; (4) discrimination based on sex under FEHA; (5) discrimination based on age under FEHA; (6) retaliation under FEHA; (7) invasion of privacy[3]; (8) conversion[4]; (9) fraud and deceit as to having never intended to honor its obligations under Plaintiff's employment contract; (10)

---

[3] See id. at 16 ("Since she was terminated, Plaintiff has received a number of telephone calls on her private line in which the caller has not spoken or had [sic] refused to identify himself or herself. Plaintiff has a privacy interest in keeping her unlisted telephone number private.  As a direct and proximate result of Defendants having given Plaintiff's private telephone number to others, Plaintiff has suffered an invasion of her privacy. . . .")

[4] See id. ("Defendants failed and refused to return all of plaintiff's personal belongings to her. . . .Plaintiff had no opportunity to gather her personal belongings and therefore left them at the branch. Defendants thereby converted these items to their own use and employment and prevented Plaintiff from having and using them.")

3

"public policy," which is further described as discriminating against Plaintiff and retaliating against her "for asserting rights protected by [FEHA]"; and (11) intentional infliction of emotional distress, based on Citibank's failure to follow Plaintiff's doctor's instructions and on having terminated her without cause. See id. at 13-18.

Defendant Citibank moved to compel arbitration of Plaintiffs' claims, pointing to the agreements that Plaintiff and Citibank executed agreeing to submit all employment-related claims to binding arbitration. Mot. at 1. These agreements are:

1. The "Principles of Employment Agreement," Austin Decl. Ex. C, signed by Plaintiff on March 8, 2007, which states:

> You agree to follow our dispute resolution/arbitration procedures for employment disputes. . . . These procedures include any qualified employment disputes (including termination of employment) that you might have with the Company. . . . These include without limitation all claims, demands or actions under Title VII of the Civil Rights Acy of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967. . . the Americans with Disabilities Act of 1990. . . . and any other federal, state or local statute, regulation or common law doctrine regarding employment discrimination, conditions of employment or termination of employment.

2. The "U.S. Consumer Group 2006 Employee Handbook Receipt Form," Austin Decl. Ex. D, signed by Plaintiff on March 15, 2007, which states:

> I understand that this Handbook contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 37). I have read that policy carefully. I also understand that no provision in this Handbook or elsewhere is intended to constitute a waiver . . . of the Company's right to compel arbitration of employment-related disputes.

3. The arbitration policy itself, which is contained in the Employee Handbook, Austin Decl. Ex. E at 37-41. It states in part:

> The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statutory, contractual, or common-law rights) that may arise between an employee or former employee and the Company . . . including, without limitation, claims, demands, or actions under title VII of the Civil Rights Act of 1964. . . and any other federal, state, or local statute, regulation, or common-law doctrine regarding employment discrimination, conditions of employment, termination of employment, breach of contract, or defamation. Id. at 37.

**B.     Facts as to Grace Fritts**

4

1   On February 6, 2008, Plaintiff Beatrice Edwards was in a car accident with Defendant Grace Fritts. Cmplt. at 1. Fritts was driving a truck while talking on her cell phone. Id. She was insured by Defendant Mercury Insurance. Id. at 2. There are no other facts in the Complaint bearing on Defendant Fritts.

In the form complaint Plaintiffs filed in state court, Plaintiffs appear to allege (i.e., they checked the boxes for) Motor Vehicle Negligence, General Negligence, and Intentional Tort against Defendant Fritts. Not. of Removal Ex. A at 5. The written Complaint attached to the form complaint does not allege any causes of action against Defendant Fritts.

### C.  Facts as to Mercury Insurance

The day after the accident, Plaintiff Carl Edwards contacted Defendant Mercury to tell them of the accident involving their insured, Defendant Fritts. Id. An agent for Mercury took an accident report and told Plaintiff of a specific autobody shop to which Plaintiff was to bring his car. Id. "Plaintiff's spouse did as instructed and the damaged vehicle was eventually repaired." Id. There are no other facts in the Complaint bearing on Defendant Mercury.

The Complaint includes three causes of action against Defendant Mercury: (1) breach of the obligation of good faith and fair dealing; (2) loss of consortium, and (3) invasion of privacy and harassment. Cmplt. at 4-5.

### II.  DISCUSSION

At the motion hearing on November 5, 2010, the Court instructed Plaintiffs to file their objections to removal, and also reminded them to file Oppositions to the pending Motions. While Plaintiffs did file their objections to removal, they did not file an Opposition to any of the Motions now pending. The Court issued an Order to Show Cause on November 23, 2010 explaining that these Oppositions were due on November 12, 2010, ordering Plaintiffs to show cause why the case should not be dismissed under Federal Rule of Civil Procedure 41(b) for failure to prosecute, and giving Plaintiffs until noon on November 29 to file any Oppositions. No Oppositions were filed, and Plaintiffs confirmed at the motion hearing on December 3, 2010 that they have only addressed the issue of removal. At the

5

hearing, Plaintiffs requested additional time to oppose the pending Motions, but presented no compelling reason for their failure to do so until now. Accordingly, while the Court does not dismiss the case based on Rule 41(b), it is proceeding to decide the Motions.

> **A.      Citibank's Motion to Compel**
>
> > **1.      Plaintiffs' Claims are Covered by the Arbitration Policy**

Plaintiffs' claims against Citibank for breach of the employment contract, breach of the obligation of good faith and fair dealing, discrimination based on race, discrimination based on sex, discrimination based on age, retaliation, fraud and deceit for never intending to honor the employment contract, the "public policy" claim for discrimination and retaliation, and the intentional infliction of emotional distress claim based on Citibank's failure to follow Plaintiff's doctor's instructions and on terminating her without cause are clearly related to both the conditions of Plaintiff's employment and her termination. They are therefore covered by the language of the arbitration policy making arbitration "the required and exclusive forum for the resolution of all employment disputes. . . ." See Austin Decl. Ex. E at 37.

Plaintiffs' claims for invasion of privacy and for conversion, while a closer question, are also both pled as related to Plaintiff's termination (the invasion of privacy claim alleges that Defendant gave "others" Plaintiff's unlisted telephone number following her termination; the conversion claim alleges that Defendant kept Plaintiff's property following her termination). See Cmplt. at 16. In a motion to compel arbitration, the burden of proof is on the party asserting jurisdiction and contesting arbitration. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227 (1987). In addition, where there are "any doubts" concerning the arbitrability of claims, a court should resolve the dispute in favor of arbitration. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 584-85 (1960) ("in the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail"). The Court finds that the invasion of privacy and conversion claims

are also covered by the employment contract. See Berman v. Dean Witter & Co., Inc., 44 Cal. App. 3d 999, 1003 (1975) ("phrase 'any controversy . . . arising out of or relating to this contract . . .' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract"). In the alternative, the Court finds that, as the Motion is unopposed, Plaintiffs have not met their burden in contesting arbitration.

### 2. The Arbitration Policy is Valid and Enforceable

Citibank's agreement is also both valid and enforceable under the FAA.[5] Under California law, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable. See Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1072 (9th Cir. 2007). The two must both be present, but not in the same degree; courts use a sliding scale, where the more procedural unconscionability there is, the less substantive unconscionability is required, and vice versa. See Armendariz v. Found. of Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000).

Citibank cannot dispute that the contract is procedurally unconscionable: "it was imposed on employees as a condition of employment and there was no opportunity to negotiate," and it is therefore a contract of adhesion. See Armendariz, 24 Cal. 4th at 114-15. An agreement is procedurally unconscionable where it is "a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." See Ting v. AT&T, 319 F.3d 1126, 1148 (9th Cir. 2003). The contract here was presented to Plaintiff as a condition of her employment; it was thus procedurally unconscionable.

To be unenforceable, however, the contract must be substantively unconscionable as well. Citibank argues persuasively that it is not. "Substantive unconscionability focuses on the one-sidedness of the contract terms. . . . Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a 'modicum of

---

[5] The FAA provides that a contract involving interstate commerce and containing an arbitration clause shall be enforced unless revocable for reasons applicable to any contract. 9 U.S.C. § 2.

7

bilaterality.'" Id. at 1149. This agreement is bilateral; it makes the results of arbitration binding on both the employee and the company. See Austin Decl. Ex. E at 37 ("the results of the arbitration process are final and binding on the employee and the Company"). It also does not limit the damages normally available under any statute. See id. at 40 ("The arbitrator shall have the authority to award compensatory damages and injunctive relief to the extent permitted by applicable law"). It provides for discovery. See id. at 39 ("Discovery requests shall be made consistent with the Rules of the AAA"). It provides for a written decision, and for "judicial review as provided by law." Id. at ¶ 20(a). It provides for neutral arbitrators per AAA procedures. Id. at ¶¶ 2-3. And it requires the Company to pay the costs for arbitration. Id. at ¶¶ 10, 24.

In fact, the Court found a very similar agreement to be enforceable in Leonard v. Citigroup Global Markets, No. 06-02181 (N.D. Cal. Nov. 21, 2005 ). See Alexander Decl. Ex. 4. In addition, the Court recently found that the precise language in the arbitration agreement here was not substantively unconscionable. See Dittenhafer v. Citigroup, 2010 WL 3063127 at *5-6 (N.D. Cal. Aug. 2, 2010).

As the arbitration agreement here is not substantively unconscionable, it is both valid and enforceable. Plaintiffs' causes of action against Citibank should be arbitrated.

### B. Mercury's Motion to Dismiss

Defendant Mercury moves to dismiss the three causes of action Plaintiffs allege against it. The Court will do so.

As to the cause of action for breach of the covenant of good faith and fair dealing, Mercury asserts that it owes no duty to Plaintiffs. Mercury Mot. at 3. An insurance company owes no duty under the covenant of good faith and fair dealing to a person injured by its insured. See Murphy v. Allstate Ins. Co., 17 Cal. 3d 937, 943-44 (1976). In addition, as Mercury notes, Plaintiffs' bad faith claim is barred by the statute of limitations. California Code of Civil Procedure section 339(1) requires that actions on contracts be brought within two years. Plaintiffs' bad faith cause of action states that "[a]s a direct and proximate result of the vehicle accident . . . Plaintiff has suffered." Cmplt. at 4. Presuming the bad faith

8

claim was triggered on February 6th, 2008 (the date of the accident), the Complaint, not filed until February 10, 2008, was untimely. See Not. of Removal Ex. A at 25. Accordingly, this cause of action is dismissed with prejudice.

Similarly, the cause of action for loss of consortium is untimely. The Complaint asserts that "[a]s a result of the vehicle accident . . . Plaintiff has been unable to provide her spouse with the love and affection . . . they were engaged in prior to the accident." Cmplt. at 4. Under California Code of Civil Procedure section 335.1, "An action for . . . injury to. . . an individual caused by the wrongful act or neglect of another" must be brought within two years. The car accident was February 6, 2008. See Cmplt. at 1 ¶ 4. The Complaint was filed on February 8, 2010, just over two years later. See id. at 25. Accordingly, this cause of action is dismissed with prejudice.

The third cause of action, for invasion of privacy and harassment, relates to Plaintiffs' allegations that "[s]ince the auto accident, Plaintiff has received a number of telephone calls on her private line in which the caller has not spoken or refused to identify himself or herself. Plaintiff believes these calls to be from Defendant or co-Defendants. Plaintiff has a privacy interest in keeping her unlisted telephone number private." Cmplt. at 5. These allegations are vague and insufficient to state a claim. See Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007). It is difficult to imagine that the repeated calling of an unlisted number could rise to the level of an invasion of privacy. See Rosales v. City og Los Angeles, 82 Cal. App. 4th 419, 429 (2000) ("actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right") (internal quotations omitted). And, nothing in the Complaint supports the conclusory allegation that Mercury is indeed the caller. The Court therefore dismisses this unsubstantiated cause of action, without prejudice; if Plaintiffs can in good faith amend this claim in a manner that would not be futile, they may do so **by December 27, 2010**. See Dumas v Kipp, 90 F.3d 386, 393 (9th Cir. 1996) (where amendment would be futile, dismissal may be ordered with prejudice).

//

//

### C. Grace Fritts's Motion to Dismiss

Finally, Defendant Grace Fritts moves to dismiss, arguing that the statute of limitations for the two negligence causes of action and the "intentional tort" cause of action that Plaintiffs apparently intend to bring against her have run. Fritts Mot. at 2. She is correct. Under California Code of Civil Procedure section 335.1, "An action for . . . injury to. . . an individual caused by the wrongful act or neglect of another" must be brought within two years. The car accident giving rise to Defendant Fritts's liability was February 6, 2008. See Cmplt. at 1 ¶ 4. The Complaint was filed on February 8, 2010, just over two years later. See Cmplt. at 25. Accordingly, the causes of action against Defendant Fritts are untimely, and are dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, the Court: GRANTS the Motion to Compel Arbitration and STAYS the case against Defendant Citibank; GRANTS the Motion to Dismiss by Defendant Mercury with prejudice, except for the invasion of privacy claim, which is dismissed without prejudice; and GRANTS the Motion to Dismiss by Defendant Grace Fritts with prejudice. The Court further ORDERS the parties remaining in the case to appear at a status conference on Friday, December 17 at 8:30 in Courtroom 8.

**IT IS SO ORDERED.**

Dated: December 6, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE