United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEATRICE EDWARDS and
CARL C. EDWARDS,

    Plaintiffs,

  v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al.,

    Defendants.

No. C 10-03755 CRB

**ORDER GRANTING SUMMARY JUDGMENT**

    Pro se Plaintiffs Carl and Beatrice Edwards have sued numerous entities, alleging a variety of causes of action loosely connected to Mrs. Edwards's February 6, 2008 car accident. See generally Not. of Removal Ex. A (dkt. 1). Many of the original defendants are no longer in the case. Defendant Mercury was dismissed. See Order (dkt. 69). Defendant Fritts was dismissed. See Order (dkt. 55). Defendant CitiBank successfully sought arbitration. Id. Defendant Kaiser has now moved for summary judgment. See Mot. (dkt. 77). Plaintiffs point to no evidence to support their allegations, and therefore, as explained below, the Court grants Kaiser's Motion.

//

//

//

**BACKGROUND**

Plaintiff Beatrice Edwards has not submitted a declaration of which the Court is aware, but her relevant allegations are as follows.[1] In June 2007 she had a seizure, was hospitalized, and had her left ankle x-rayed. FAC (dkt. 75) ¶ 13. Dr. Ford, a Kaiser podiatrist, reviewed her x-ray in August 2007, and then did a follow-up biopsy in October 2007. Id. Plaintiffs allege that Dr. Ford did not tell Mrs. Edwards at that time that she had a condition called AVN.[2] Not. of Removal (dkt. 1) Ex. A at 21. In February 2008, Mrs. Edwards was in a car accident in which she injured her knee. FAC (dkt. 75) ¶ 14. She had knee surgery. Id. ¶ 18. In August 2008, Dr. Ford did another x-ray on Mrs. Edwards's ankle, which showed that she had AVN. Id. ¶ 21. Dr. Ford released Mrs. Edwards to work. Id. ¶ 22. Because she was in pain, she was unable to return to work, but because of the releases from her doctors, she was unable to convince MetLife, her disability insurance carrier, that she should receive disability benefits. Id. ¶¶ 22-23. MetLife discontinued her benefits. Id. Mrs. Edwards's AVM is permanent. Id. ¶ 29.

Although Plaintiffs' original Complaint included three causes of action against Kaiser, Not. of Removal (dkt. 1) Ex. A at 21-24,[3] the FAC includes ten (in large part because all of the FAC's causes of action are asserted against all of the defendants), see FAC (dkt. 75) ¶¶

---

[1] Plaintiffs attempted to file a First Amended Complaint ("FAC") in April 2011, in contravention of Federal Rule of Civil Procedure 15(a)(2). See dkt. 75. The Court thereafter directed the Clerk's office not to file the FAC and clarified that the original Complaint (dkt. 1 Ex. A) "remains the operative complaint in this case." See Order (dkt. 80) at 1-2. At the motion hearing, Plaintiffs again asked that the FAC be considered the operative complaint in the case, and the Court agreed. However, the Court stresses that Plaintiffs are not permitted a second bite at the apple: the FAC is only accepted as to Kaiser and MetLife; it is not accepted as to Grace Fritts, Mercury, and Citibank, former defendants who are no longer a part of this suit. At the motion hearing on June 16, 2011, the Court ordered MetLife to respond to the FAC. The facts recounted here are drawn from the FAC and, where noted, from the original Complaint.

[2] The FAC defines AVN as "aseptic necrosis," id. ¶ 21; Kaiser asserts that it stands for "avascular necrosis," Mot. (dkt. 77) at 1.

[3] Of the three, two – fraud and breach of the implied covenant of good faith and fair dealing in connection with Mrs. Edwards's membership agreement with Kaiser – are not asserted in the FAC. Compare id. with FAC (dkt. 75) ¶¶ 31-70. This Order will therefore not address the two claims that Plaintiffs dropped in their FAC, other than to say that the Court was prepared to grant summary judgment for Kaiser on these claims, too, in light of the lack of evidence supporting Plaintiffs' allegations in general and especially as to (1) the existence of a misrepresentation for the fraud claim; and (2) the existence of a contractual relationship for the bad faith claim.

2

31-70. They are (1) race discrimination; (2) sex discrimination; (3) retaliation; (4) tortious discharge in violation of public policy; (5) tortious discharge in violation of public policy – gender; (6) tortious discharge in violation of public policy – retaliation; (7) wrongful termination based on breach of employment contract; (8) wrongful termination based on breach of the covenant of good faith and fair dealing; (9) intentional infliction of emotional distress ("IIED"); and (10) negligent infliction of emotional distress ("NIED"). Id. Three Kaiser entities (Kaiser Foundation Hospitals ("KFH"), Kaiser Foundation Health Plan, Inc. ("KFHP") and The Permanente Medical Group, Inc. ("TPMG"), sued as "Kaiser Permanente" and referred to collectively herein as "Kaiser"), move for summary judgment on these claims. See Mot. (dkt. 77).

Plaintiffs did not timely oppose Kaiser's Motion, and so this Court issued an Order to Show Cause why the Motion should not be granted. See Order (dkt. 82). Plaintiffs responded, saying that they believed for some time an attorney was representing them. See Response (dkt. 84) at 2. Plaintiffs "plead[ed] with the Court for additional time to reply." Id. They also attached an Opposition. Id. at 3-11. Kaiser subsequently filed a Reply, asking the Court to reject the untimely Opposition. See Reply (dkt. 85). The Court grants Plaintiffs' request that it consider their untimely Opposition, notwithstanding Plaintiffs' history of disregarding court deadlines. See, e.g., Order on Motion to Dismiss (dkt. 55) at 5-6 ("The Court issued an Order to Show Cause on November 23, 2010 explaining that these Oppositions were due on November 12, 2010, ordering Plaintiffs to show cause why the case should not be dismissed under Federal Rule of Civil Procedure 41(b) for failure to prosecute, and giving Plaintiffs until noon on November 29 to file any Oppositions. No Oppositions were filed . . . "); Order Denying Motion for Permission to File Motion for Reconsideration (dkt. 59) at 2 ("Plaintiffs assert that they did not oppose the various motions addressed by the Court's December 6, 2010 Order (dckt. no. 55) because they understood that they should not do so until the Court determined whether removal was proper. Id. This assertion is contrary to the Court's explicit instructions to Plaintiffs"). Plaintiffs should not expect to receive any further extensions of time in this case.

3

**LEGAL STANDARD**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden is on the moving party to demonstrate that there is no genuine dispute with respect to any material fact and that it is entitled to judgment as a matter of law. Id. at 323. A genuine issue of fact is one that could reasonably be resolved in favor of the nonmoving party. Anderson, 477 U.S. at 248. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Id. at 248-49.

If the moving party does not satisfy its initial burden, the nonmoving party has no obligation to produce anything and summary judgment must be denied. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000). If, on the other hand, the moving party has satisfied its initial burden of production, then the nonmoving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Id. at 1103. The nonmoving party must "set out 'specific facts showing a genuine issue for trial.'" Celotex, 477 U.S. at 324-25 (quoting Fed. R. Civ. P. 56(c)). If the nonmoving party fails to make this showing, the moving party is entitled to judgment as a matter of law. Id. at 323.

When deciding a summary judgment motion, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255. However, it is not a court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to identity with reasonable particularity the evidence that precludes summary judgment. See id.
//

4

**DISCUSSION**

Kaiser moved for summary judgment on each of Plaintiffs' causes of action. "[O]ut of an abundance of caution," Kaiser's Motion discussed the new claims alleged against it in the FAC. See Mot. (dkt. 77) at 4. Although, per the Court's earlier Order (dkt. 80), the FAC was not the operative complaint at the time of briefing, the Court granted Plaintiff's request at the hearing that the FAC be operative, and Kaiser represented at the hearing that it was satisfied with the arguments it made in its Motion as to the claims in the FAC. Indeed, Kaiser is entitled to summary judgment on all of the claims against it. The Court will explain why, beginning with the two claims most relevant to Kaiser.

### A. Intentional Infliction of Emotional Distress

The FAC does not make clear the basis of Plaintiffs' IIED claim against Kaiser, stating only as to all defendants that "[t]he above-described conduct of Defendants and their agents was extreme and outrageous and an abuse of the authority and position of Defendants." FAC (dkt. 75) ¶ 66. The Court will assume that, as in the original Complaint, the IIED claim is based on Plaintiffs' allegation that Kaiser doctors did not timely inform Mrs. Edwards of her diagnosis. See Not. of Removal (dkt. 1 Ex. A) at 23 ("The conduct by Defendants was extreme, outrageous, and an abuse of the authority and position of each of them. Defendant's action to withhold vital information from Plaintiff's [sic] regarding the medical condition of Plaintiff's ankle, contributed to the worsening condition of Plaintiff's injuries, resulting in Plaintiff having mobility restrictions on a permanent basis" and "depression and emotional distress.") Id.

"The elements of a prima facie case of intentional infliction of emotional distress in California are: '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Corales v. Bennett, 567 F.3d 554, 571 (9th Cir. 2009) (citing Tekle v. United States, 511 F.3d 839, 855 (9th Cir.2007) (as amended)). Kaiser asserts that it is entitled to summary judgment on this

5

1 claim because (1) its conduct was not extreme and outrageous, and (2) Plaintiffs have not
2 demonstrated severe emotional distress. Mot. (dkt. 77) at 8-11. The Court agrees.

3 As for the requirement that Kaiser's conduct be extreme and outrageous, Plaintiffs
4 allege that Kaiser did not disclose to Mrs. Edwards that she had AVN, see Not. of Removal
5 (dkt. 1 Ex. A) at 21, but the evidence is entirely to the contrary. Dr. Ford has declared that he
6 discussed Mrs. Edwards's diagnosis of AVN with her in November 12, 2007, Mrs.
7 Edwards's first visit following her ankle biopsy. See Ford Decl. ¶ 8 ("On November 12,
8 2007, I met with Mrs. Edwards and advised her of the pathology results, i.e., that she had
9 AVN of her left talus"). In her deposition, Mrs. Edwards was asked about a letter she sent in
10 July 2008 which acknowledged that "last fall," Dr. Ford had determined that she had "aseptic
11 necrosis of [her] left ankle bone," and she conceded that she would not have written the letter
12 had it not been truthful, and that her recollection would have been better in July 2008 than it
13 was today. See Edwards depo. 19:7-20:6. In their Opposition brief, Plaintiffs state only,
14 "Plaintiffs do not recall Dr. Ford informing them of his diagnosis of avascular necrosis
15 (AVN)." Opp'n (dkt. 84) at 6. But Plaintiffs' lack of memory does not create a genuine
16 issue of material fact as to whether Mrs. Edwards was given such a diagnosis. Moreover, Dr.
17 Ford declared that "I can state with certainty that her physical therapy had nothing to do with
18 the worsening of her AVN." Id. ¶ 11. And Plaintiffs offer no counterveiling testimony that
19 the physical therapy, or anything else, caused Mrs. Edward harm.[4]

20 Because the only evidence in the record shows that Dr. Ford did inform Mrs. Edwards
21 of her AVN diagnosis in November 2007, that conduct – timely giving a patient an accurate
22 diagnosis – cannot be considered "extreme and outrageous." See Cochran v. Cochran, 65
23 Cal. App. 4th 488, 494 (1998) (explaining that "the alleged conduct must be so extreme as to
24 exceed all bounds of that usually tolerated in a civilized community" and collecting cases in
25 which conduct was or was not sufficiently outrageous). In Schneider v. TRW, Inc., 938 F.2d
26 986, 992-93 (9th Cir. 1992), a case discussed in Cochran, id. at 497, the Ninth Circuit found

---

[4] The FAC makes no allegations of causation, and even the original Complaint alleges only that the physical therapy, and going about her daily routine, only "possibly" and "probably" worsened Mrs. Edwards's condition. See Not. of Removal (dkt. 1 Ex. A) at 22.

6

1    that summary judgment was proper where the trial court held that defendant's screaming,
2    yelling and making threatening gestures at a supervisee was not outrageous. Kaiser's
3    conduct here does not even rise to the level of the conduct that was found to be not
4    outrageous in Schneider. Plaintiffs have therefore failed to prove this element.[5] See id. at
5    992 (summary judgment is appropriate if claim cannot reasonably be regarded as so extreme
6    and outrageous as to permit recovery) (internal quotation marks omitted).

7    As for the requirement that Kaiser's conduct cause Mrs. Edwards emotional distress,
8    although Plaintiffs allege that they suffered "severe emotional distress, anxiety and
9    humiliation," FAC (dkt. 75) ¶ 67, they have failed to prove this element. "Serious mental
10   distress may be found where a reasonable man, normally constituted, would be unable to
11   adequately cope with the mental stress engendered by the circumstances of the case."
12   See Molien v. Kaiser Found. Hosps., 27 Cal. 3d 916, 927-28 (1980). In Kelly-Zurian v.
13   Wohl Shoe Co., 22 Cal. App. 4th 397, 410 (1994), for example, the court found that there
14   was "substantial evidence of significant mental distress" where a plaintiff suffered from
15   panic attacks, was depressed and couldn't sleep, developed a serious drinking problem and
16   was diagnosed with post-traumatic stress disorder. Here, although Plaintiffs argue in their
17   Opposition brief that Mrs. Edwards is severely distressed, see Opp'n (dkt. 84) at 8-9 ("often
18   I'm unable to get a restful night's sleep without taking sleep medication," "I have a seizure
19   condition which can be triggered by stress," "I've had several counselling sessions with [a
20   psychologist]"), they point to no evidence in the record that supports such allegations. See
21   Nissan Fire, 210 F.3d at 1103 (". . . the nonmoving party may not rest upon mere allegations
22   or denials of the adverse party's evidence, but instead must produce admissible evidence that
23   shows there is a genuine issue of material fact for trial.").

24   Plaintiffs have failed to establish at least two elements of their IIED claim.
25   Accordingly, the Court GRANTS Kaiser's Motion for Summary Judgment as to it.

---

[5] In their Opposition, Plaintiffs assert that Dr. Ford's failure to immediately put Mrs. Edwards on disability "is outrageous conduct." Opp'n (dkt. 84) at 7. While there is no dispute that Dr. Ford did not put Mrs. Edwards on disability immediately, Plaintiffs point to no authority finding that such an action could rise to the level of outrageous conduct.

7

### B.       Negligent Infliction of Emotional Distress

The FAC also does not make clear the basis for Plaintiffs' NIED claim against Kaiser, stating only that "Defendants knew, or should have known with the exercise of reasonable care, that the foregoing conduct would cause serious emotional distress to Plaintiffs. As a proximate result of Defendants' negligent conduct, Plaintiffs suffered severe emotional distress, anxiety and humiliation." See FAC (dkt. 75) ¶ 70. In California, NIED is not truly "an independent tort but the tort of negligence to which the traditional elements of duty, breach of duty, causation, and damages apply." See Wong v. Tai Jing, 189 Cal. App. 4th 1354, 1377 (2010). But Plaintiffs again fail to point to evidence in support of any of these elements.

There is no breach of duty involved in timely giving a patient an accurate diagnosis. Nor have Plaintiffs established a breach of the duty of care by suggesting that Mrs. Edwards's physical therapy or return to work might have worsened her condition. See Not. of Removal (dkt. 1 Ex. A) at 22; Zavala v. Bd.of Trusees, 16 Cal. App. 4th 1755, 1764 (1993) (quoting Huffman v. Lindquist, 37 Cal. 2d 465, 474 (1951) ("Negligence on the part of a physician or surgeon will not be presumed; it must be affirmatively proved."). In general, expert testimony of a doctor's negligence is required unless the case presents a matter of common knowledge. Id. Here, the doctors involved have declared that their treatment of Mrs. Edwards was in compliance with the standard of care in the community. See Ford Decl. ¶ 13; Cummins Decl.¶ 4. Plaintiffs point to no evidence, expert or otherwise, to the contrary.

Plaintiffs also offer no evidence of damages. As already discussed, they have submitted no evidence of Mrs. Edwards's emotional harm. And, they offer no evidence in support of financial harm. The original Complaint alleges that Kaiser submitted erroneous documents to MetLife, causing them to terminate Mrs. Edwards's long-term disability benefits for nine months. See Not. of Removal (dkt. 1 Ex. A) at 21. However, Kaiser points to evidence that, although Mrs. Edwards's long-term disability, which began on June 16, 2008, was discontinued on September 30, 2008, it was reinstated effective September 30, 2008, and therefore she was "continuously entitled to receive [long-term disability] benefits

1 since June 16, 2008." See Mot. at 2-3 (citing MetLife's Answer ¶¶ 57- 59, 67); Hollford
2 Decl. ¶ 3 ("Mrs. Edwards's claim for long term disability benefits was approved effective
3 June 16, 2008, and she continues to receive long term disability benefits as of this
4 declaration"). Again, Plaintiffs dispute this evidence, see Opp'n (dkt. 84) at 7 ("Mr. Hallford
5 makes sworn statements under penalty of perjury which are false"), but they provide the
6 Court with no counterveiling evidence. This is insufficient. See Nissan Fire, 210 F.3d at
7 1103 ". . . the nonmoving party may not rest upon mere allegations or denials of the adverse
8 party's evidence, but instead must produce admissible evidence that shows there is a genuine
9 issue of material fact for trial.").

10 Plaintiffs have failed to establish at least two elements of their NIED claim.
11 Accordingly, the Court GRANTS Kaiser's Motion for Summary Judgment as to it.

### C. Plaintiffs' Remaining Claims

Although the eight remaining claims in the FAC are asserted against all defendants, and therefore also against Kaiser, Plaintiffs point to no evidence or even allegations connecting such causes of action to Kaiser. As asserted in the FAC, the race and sex discrimination claims, as well as the retaliation claim, involve employment and pertain to Mrs. Edward's dealings with Citibank, her former employer, not Kaiser.[6] See FAC (dkt.75) ¶¶ 31-43. The FAC's claims involving tortious discharge also explicitly relate to employment, and again pertain to Citibank, not Kaiser. See id. ¶¶ 44-55. The FAC's claims involving wrongful termination also explicitly relate to employment, and therefore also pertain to Citibank, not Kaiser. See id. ¶¶ 56-64. Plaintiffs point to no evidence in support of these causes of action as to Kaiser. Accordingly, the Court GRANTS Kaiser's Motion for Summary Judgment as to them.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Kaiser's Motion for Summary

//

---

[6] Again, the Court has already granted Citibank's Motion to Compel arbitration with Plaintiffs, see Order (dkt. 55), and the FAC is not accepted as to Citibank.

**United States District Court**
For the Northern District of California

1  Judgment (dkt. 77) as to all claims.

2  **IT IS SO ORDERED.**

4  Dated: June 20, 2011

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE